Mary Louise **ROGERS**, individually and as Personal Representative and Administratrix, of the estate of Robert Vernon Rogers, deceased, Marietta, Ohio, Plaintiff,

v.

**TRI-STATE MATERIALS CORPORA-TION, a West Virginia Corporation, Parkersburg, W. Va., Defendant.**

Civ. A. No. C-69-12-P.

United States District Court,
N. D. West Virginia.

Dec. 3, 1970.

Roger F. Redmond, Parkersburg, W. Va., Richard J. Thomas, Marietta, Ohio, for plaintiff.

Fred L. Davis, Parkersburg, W. Va., for defendant.

MAXWELL, Chief Judge.

Plaintiff, Mary Louise Rogers, acting individually and as administratrix of the estate of her deceased husband, Robert Vernon Rogers, seeks to recover in this action against defendant the sum of $250,000.00 on account of the death of her husband on or about November 14, 1967. Her complaint alleges that her husband was employed by defendant, Tri-State Materials Corporation, "as an able seaman, deck hand and member of

the crew" on defendant's towboat operating in interstate commerce on navigable waters of the United States, the Kanawha River in West Virginia. She asserts that "decedent, in the course of his employment, pursuant to orders and while in the performance of his duties on said vessel, including his last duties in the area of the galley exit door, suffered serious and numerous injuries to his person, and pain and suffering eventuating in his death by drowning caused by the negligence of Defendant, *it's* officers, servants, workmen and employees and by the unseaworthiness of the vessel and also by the Defendant's breach of *it's* obligations under the circumstances, including *it's* obligation to provide a safe place to work for the decedent seaman, and as a part thereof prompt, proper and ordinary assistance and help in the event of accident, purely by reason of the negligence of the Defendant and the unseaworthiness of the vessel, including defective and inadequate side life chain turnbuckle hook, side life chain system, inadequate illumination and hazardous door sill design."

Plaintiff is a citizen of the State of Ohio. Defendant is a corporation incorporated under the laws of the State of West Virginia with its principal offices at Parkersburg, West Virginia. Further, in reference to jurisdiction, the complaint states:

"* * * This is an action under the General Maritime Law of the United States, as supplemented by the Jones Act, U.S.C. Title 46, § 688, and thereby Title 45, § 51 and following, maintained under the provisions of § 33 of the Act of June 5, 1920, c. 250, 41 Stat. 1007, and Wrongful Death and survival statutes of the State of West Virginia."

Defendant, in its answer, asserts it was not guilty of any negligence which proximately caused or in any way contributed to the death of plaintiff's decedent and that the death of plaintiff's decedent was caused solely by said decedent's negligence. This basic issue of negligence has precipitated the immediate issues for decision upon defendant's interrogatories directed to plaintiff and her attorneys and her attorneys' objections to the interrogatories.

Defendant's seven interrogatories, pursuant to Rule 33, Federal Rules of Civil Procedure, are in the following language:

1. Specify in detail what act or acts of negligence the plaintiff charges that were committed by the defendant.

2. Please give the names and addresses of witnesses who can testify in support of the act or acts of negligence set forth under Interrogatory No. 1 hereof.

3. Upon what grounds does plaintiff base her case in addition to the alleged acts of negligence set forth in answer to Interrogatory No. 1 hereof.

4. Can plaintiff connect the alleged acts of negligence with the death of Robert Vernon Rogers? If the answer to this question is in the affirmative, which one or more of said alleged acts of negligence caused the death of Robert Vernon Rogers and what witness or witnesses will so testify, giving the names and addresses of such witness or witnesses.

5. Is plaintiff relying upon some presumption of law or fact that the death of Robert Vernon Rogers was caused by the defendant? If so, what is the nature of such presumption of law or fact, stating specifically such evidence in detail along with the witness or witnesses and their addresses who will testify in support of same?

6. Did plaintiff's decedent drink intoxicating liquors at any time within one year preceding the accident? If so, to what extent?

7. Who was dependent upon Robert Vernon Rogers for financial support at the time of his death, giving the names and ages of such dependents and how long they had been dependent upon him for such financial support?

Plaintiff objected in writing to defendant's interrogatories 1, 2, 3, 4, 5 and 6, but answered interrogatory 7, which need not be further considered here. Later, by order of February 18, 1970, entered on agreement of the parties, defendant substituted a new interrogatory 6, which plaintiff answered, thereby eliminating it from further consideration at this time.

The Court's order entered on February 18, 1970, discloses continued controversy as to interrogatories 1, 2, 3 and 4 and 5, although interrogatories 2, 4 and 5 were modified in limited areas relating to names and addresses of witnesses.

In essence the complaint contemplates a claim for wrongful death under federal and state law, for plaintiff's recovery of compensation on account of decedent's "death by drowning caused by the negligence of Defendant * * * and by the unseaworthiness of the vessel and also by Defendant's breach of it's (sic) obligations under the circumstances * * * purely by reason of the negligence of the Defendant and the unseaworthiness of the vessel * * *."

The West Virginia wrongful death statute, West Virginia Code, § 55–7–5 (Michie 1966), contemplates death "caused by wrongful act, neglect, or default." Liability under the statute is explained by the West Virginia Supreme Court of Appeals in this language:

"In an action for wrongful death, there can be no recovery unless the defendant is guilty of primary negligence based on the violation of a legal duty which proximately causes the fatality." Osborne v. C. & P. Telephone Co., 121 W.Va. 357, 3 S.E.2d 527 (1939).

The Jones Act, 46 U.S.C. § 688, upon which this action is based, incorporated by reference and makes applicable the Federal Employers' Liability Act, 45 U.S.C. § 51. This latter Act imposes liability for death "resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence," in its equipment. See generally Gillespie v. United States Steel Corp., 321 F.2d 518 (Cir. 6th 1963), and 379 U.S. 148, 85 S. Ct. 308, 13 L.Ed.2d 199 (1964); 32 Am. Jur.2d, Federal Employers' Liability and Compensation Acts, § 50 (1967). See also Moragne v. States Marine Lines, Inc., 398 U.S. 375, 90 S.Ct. 1772, 26 L. Ed.2d 339 (1970).

■ The settled law as to requirements of negligence for recovery under the Jones Act appears to be well stated in West v. Eastern Transportation Co., 179 F.2d 478 (Cir. 4th 1950), in the following language:

Under the Jones Act, two requirements must be satisfied in order to maintain an action. (1) There must have been a negligent act on the part of defendant; (2) The act must have contributed to the injury. The Matagalpa, D.C., 9 F.Supp. 416. See, also, De Zon v. American President Lines, Ltd., 318 U.S. 660, 63 S.Ct. 814, 87 L. Ed. 1065, rehearing denied 319 U.S. 780, 63 S.Ct. 1025, 87 L.Ed. 1725; Pittsburgh S.S. Co. v. Palo, 6 Cir., 64 F.2d 198.

In 4 Benedict on Admiralty, § 612, at page 202 (6th Ed. 1940), is the summary statement that

The gravamen of a Jones Act suit is the negligence of the employer of the plaintiff-seaman, and such negligence must be alleged and proved. * * *

In this action plaintiff's complaint asserts that decedent's death by drowning was "caused by the negligence of Defendant" and "purely by reason of the negligence of the Defendant." Defend-

ant's answer asserts it was not guilty of any negligence which was the proximate cause or contributed in any way to the death of plaintiff's decedent. This situation typifies current notice pleading and points to the need and efficacy of other practical tools, greatly provided by depositions and discovery under Rules 26–37, Federal Rules of Civil Procedure.

In 5 Wright and Miller, Federal Practice and Procedure § 1215 (1969), the writers state:

> According to Rule 8(a) (2), the heart of an affirmative federal pleading need consist only of "a short and plain statement of the claim showing that the pleader is entitled to relief." All that is necessary is that the claim for relief be stated with brevity, conciseness and clarity. This portion of Rule 8 indicates the objective of the rules to avoid technicalities and to require that the pleading discharge the function of giving the opposing party fair notice of the nature and basis or grounds of the claim and a general indication of the type of litigation involved; the discovery process bears the burden of filling in the details.

In § 1216 it is pointed out that the pleader is not required, in stating his claim on negligence, to set out in his complaint the facts constituting a cause of action. Later in § 1249 is the apt comment:

> If defendant needs details as to the specific manner in which he is claimed to have been negligent, he can obtain them under the provisions for discovery. It is not necessary to set forth in detail the nature of the injuries.

\* \* \*

A motion for a more definite statement under Rule 12(e) is normally not a proper tool in this situation and of course the old bill of particulars was abolished in 1948. Wright, in his Law of Federal Courts § 66, at pages 277–278 (2d ed. 1970), observes:

Another disfavored motion is the motion for a more definite statement. By a 1948 amendment to the rules, the old bill of particulars was abolished. The motion for more definite statement, which serves much the same function, is to be granted only where a pleading to which a responsive pleading is permitted is so vague or ambiguous that the party cannot reasonably be required to frame a responsive pleading. If the pleading is sufficiently definite that the opponent can reply to it, the motion for more definite statement should be denied and any particulars that the opponent needs to prepare for trial obtained by depositions, interrogatories, and similar discovery procedures. The motion is never proper where no responsive pleading is permitted, nor should it be used to force the plaintiff to include additional particulars that may make the complaint vulnerable to a motion to dismiss.

In the action now before the Court the interrogatories were served by mail on December 23, 1969, and all proceedings and developments thereon have taken place prior to July 1, 1970, the effective date of the revision of Rule 33 and other Rules relating to depositions and discovery. While it is important to note that some material changes have been made in the language of Rule 33, such changes will have little material effect on application of the Rule in its totality to the present case. Among decisions of particular interest in this area of the law is Hartsfield v. Gulf Oil Corp., 29 F.R.D. 163 (D.C.E.D.Pa.1962), which, while not making specific mention of Rule 33, meaningfully discusses the Rule and aptly applies it to a situation somewhat comparable to the action here considered. Judge Abraham L. Freedman's opinion in the *Hartsfield* case follows:

> The plaintiff objects to interrogatories propounded by defendant.

> Plaintiff has sued for damages for the death of her husband, who had

been employed by defendant as a member of the crew of the S.S. "Gulfvictor". The complaint (§ 5) alleges that decedent's death occurred because he "was forced to work under improper circumstances and proper and prompt medical treatment was withheld from him". The complaint (§ 6) then declares that defendant was negligent and the vessel unseaworthy. In eleven subsections these charges are detailed. Such specifications, of course, are not required under the Federal system of notice pleading. F.R.Civ.P., rule 8(a), 28 U.S.C.A.; Moore, Federal Practice (2d ed.), § 8.12, p. 1647, and cases there cited. However, the seemingly elaborate allegations of negligence and unseaworthiness are shown on examination to be both repetitious and illusory. For example, one subsection charges defendant with "causing and/or permitting plaintiff's decedent to work under improper or dangerous conditions", while another charges defendant with "ordering and/or requiring plaintiff's decedent to perform his duties under improper and dangerous conditions and for dangerously long periods of time". Despite this repetition that decedent worked under conditions which were "improper" and "dangerous", there is no statement of what it was that made them so.

The interrogatories follow a simple pattern: they tread the path marked out by the eleven subsections detailing negligence and unseaworthiness, and in each instance after specifically referring to them ask plaintiff: "State in detail the facts or information supporting this allegation or upon which this allegation is based."

Plaintiff objects that the interrogatories call for opinions and conclusions of counsel and seek the work product of counsel.

A number of courts have refused to permit interrogatories which call for details of the negligence charged; and it has been said that they are improper because they call for expressions of opinion or conclusions and that an answer to them would foreclose the plaintiff from pressing some new theory or new fact at the trial. But it is now settled that interrogatories are an appropriate means for obtaining a specification of the facts upon which a claim of negligence is founded. As early as Sierocinski v. E. I. Du Pont De Nemours & Co., 103 F.2d 843 (3d Cir., 1939), our Court of Appeals held that a complaint need only allege negligence, and if the defendant needs more information he should obtain it by interrogatories. Since then the motion for a bill of particulars has been abolished, and the motion for a more definite statement, although still permitted, obviously is unjustified because a complaint need allege negligence and unseaworthiness only in general terms (F.R.C.P., Appendix, Form 9). Discovery, therefore, alone is available, and there is no reason to limit it to oral depositions. Interrogatories are inexpensive and their scope, since the amendment of 1946, is just as broad.

The objection that the interrogatories require the statement of conclusions or opinions is unjustified in the present circumstances. Opinions and conclusions are inherent in any specification of the factual basis of a claim of negligence. The allegation of negligence itself is the statement of a conclusion, and since negligence may be pleaded broadly, a statement of the facts upon which the conclusion is based can hardly be forbidden as the expression of conclusions. Nor is it necessarily improper to require conclusions or opinions. The Rules themselves do not preclude it, and to establish such a prohibitory principle would enthrone theoretical considerations of

logical symmetry above the practical requirements of everyday litigation. Any denial of interrogatories which are calculated to lead to evidence or to narrow the issues would thwart the purpose of the Rules. 4 Moore, Federal Practice (2d ed.), § 33.17.

The rule which precludes one party from obtaining the work product of his opponent's lawyer is inapplicable. For it is everyday experience that the operation of the trained mind of the lawyer is required to formulate the pleadings and the answers to instruments of discovery such as interrogatories. Even the bare allegation of negligence is the ultimate product of the play of the lawyer's mind in marshalling the facts and measuring them by the legal standard of due care. Acceptance of plaintiff's contention would be to adopt an unrealistic view of litigation and to ignore the role of the lawyer in carrying it forward.

In Hickman v. Taylor, 329 U.S. 495, 507, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947), where the lawyer's work product doctrine was established, the Supreme Court said: "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." The defendant is entitled to have the information sought and this is especially clear in the present circumstances, where it asserts that it has no knowledge of an accident involving decedent aboard its vessel and the vagueness of the complaint leaves it in the dark regarding the claim against it.

The language of the Rules relating to interrogatories will merit reexamination. At the time the interrogatories were initiated in this action, the second paragraph of Rule 33 provided:

Interrogatories may relate to any matters which can be inquired into under Rule 26(b), and the answers may be used to the same extent as provided in Rule 26(d) for the use of the deposition of a party. Interrogatories may be served after a deposition has been taken, and a deposition may be sought after interrogatories have been answered, but the court, on motion of the deponent or the party interrogated, may make such protective order as justice may require. The number of interrogatories or of sets of interrogatories to be served is not limited except as justice requires to protect the party from annoyance, expense, embarrassment, or oppression. The provisions of Rule 30(b) are applicable for the protection of the party from whom answers to interrogatories are sought under this rule.

Pertinent provisions of Rule 26 then provided in part:

(a) *When Depositions May Be Taken.* Any party may take the testimony of any person, including a party, by deposition upon oral examination or written interrogatories for the purpose of discovery or for use as evidence in the action or for both purposes. \* \* \*

(b) *Scope of Examination.* Unless otherwise ordered by the court as provided by Rule 30(b) or (d), the deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the examining party or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of relevant facts. It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence.

■ It will be noted (1) that interrogatories may be employed for discovery or for obtaining evidence or for both purposes, (2) that the scope of examination by interrogatories includes "any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the examining party * * *", and (3) that interrogatories may precede depositions or depositions may precede interrogatories. See also Rule 26(d), Federal Rules of Civil Procedure, effective July 1, 1970. In 2A Barron and Holtzoff, Federal Practice and Procedure, § 763 (1961), is the observation that "interrogatories are useful chiefly to obtain simple facts, to narrow the issues by obtaining admissions from the adverse party, and to obtain information needed in order to make use of other discovery procedures." The methods of discovery are complementary, not alternative or exclusive. Stonybrook Tenants Association, Inc. v. Alpert, 29 F.R.D. 165, 167 (D.C.Conn. 1961). Answers to interrogatories may be useful in developing later depositions. Franchise Programs, Inc. v. Mr. Aqua Spray, Inc., 41 F.R.D. 172, 174 (D.C.S. D.N.Y.1966).

The basic issue in this action at this time, as earlier noted, is plaintiff's charge that defendant was negligent and defendant's denial thereof. In plaintiff's memorandum in support of her objections to defendant's interrogatories, it is argued that to "require Plaintiff to state in full the whole case at this stage of the proceedings is, under the above circumstances, manifestly oppressive and a tactical maneuver designed to mummify Plaintiff's case. This is the type of 'battle of wits' and 'race of the diligent' that the Federal Rules were intended to prevent, in the interest of justice to the litigants." Decedent's death occurred on November 14, 1967, and counsel for plaintiff instituted this action on November 13, 1969. Defendant's answer was filed on December 3, 1969, and defendant's interrogatories were mailed to plaintiff's attorneys on December 23, 1969. Defendant's timely procedures can hardly be considered to manifest a "battle of wits" or a "race of the diligent." Its procedures appear to be in harmony with the purposes of modern discovery as summarized in 23 Am.Jur. 2d, Depositions and Discovery, § 155 (1965), in the following language:

Generally speaking, the purpose of modern discovery is to assist the administration of justice, to aid a party in preparing and presenting his case or his defense, *to advance the function of a trial* in ascertaining truth, and *to accelerate the disposition of suits.* Beyond this, the rules for discovery are designed *to eliminate,* as far as possible, *concealment and surprise in the trial* of lawsuits, to the end *that judgments be rested upon the real merits* of causes and not upon the skill and maneuvering of counsel. (Emphasis supplied).

■ Defendant's five unanswered interrogatories, to which plaintiff objects, seek specific and detailed information concerning defendant's negligence which plaintiff in her complaint asserts resulted in decedent's death by drowning in the Kanawha River on or about November 14, 1967. In substance the interrogatories make these inquiries:

1. What specific act or acts of negligence were so committed by defendant?

2. What are the names and addresses of persons having knowledge of relevant facts concerning these acts of negligence?

3. In addition to the alleged acts of negligence, upon what other grounds does plaintiff base her case?

4. If acts of defendant's negligence caused the death of decedent, what are the names and addresses of persons having knowledge of relevant facts of such acts?

5. If plaintiff is relying upon some presumption of law or fact that defend-

ant caused the death of decedent, what is the nature of the presumption?

In 35A C.J.S. Federal Civil Procedure § 684 (1960), is the summary statement that

Interrogatories may generally be propounded as to the circumstances or cause of an accident or injury, including negligence, contributory negligence, and the condition of the premises.

4 Moore's Federal Practice, § 33.15, page 2329 (1969), states: "Of course the facts constituting negligence and contributory negligence or other defenses may be inquired into by either side." Authority may be found for the proposition that a claim based on a too general statement of negligence may be dismissed as insufficient. Modin v. Matson Navigation Co., 128 F.2d 194 (Cir. 9th 1942). See also 23 Am.Jur.2d, Depositions and Discovery, § 160 (1965). But interrogatories are a particularly appropriate means of discovery where sufficiently general allegations of negligence are contained in a complaint, as indicated by the following language from Gerber v. United States Lines Co., 15 F.R. D. 500 (D.C.S.D.N.Y.1954):

This is a seaman's action for personal injuries. Paragraph Seventh of the complaint reads as follows:

"The aforesaid occurrence was due solely to the negligence of the defendant; the fault, neglect and carelessness of the officers and fellow seamen aboard the vessel; the failure of the defendant to keep and maintain the vessel, its appurtenances and equipment in a reasonable state of repair; and defendant's failure to take any means or precautions for the safety of the plaintiff in failing to provide the plaintiff with a reasonably safe place wherein to work; and in addition thereto plaintiff was caused to fall over the hauling part of a guy wire on the starboard side of the No. 4 hatch, sustaining severe and serious personal injuries."

Defendant argues that the purpose of the contested interrogatories is particularization of these general allegations of negligence and further contends that questions seeking contentions and conclusions of law are not objectionable when sought for that purpose.

The bill of particulars has been abolished on the theory that its purpose can be achieved under the Federal Rules by pre-trial discovery. See 2 Moore, Federal Practice (2d ed.) § 12.17. A number of decisions have held objectionable interrogatories which seek the claims of an adverse party on the ground that only the actual facts and not the claimed facts are the proper subject of pre-trial discovery. See, for example, Ryan v. Lehigh Valley R. Co., D.C.S.D.N.Y., 5 F. R.D. 399, 400. Some courts have been reluctant to require parties to commit themselves to a particular theory in advance of trial. See cases cited in Brayton v. Crowell-Collier Pub. Co., D.C.S.D.N.Y., 12 F.R.D. 325, 327–28.

One of the purposes of pre-trial discovery is to narrow and simplify the issues. To this end, particularly in patent suits, some courts have allowed interrogatories seeking the claims of an adverse party where the pleadings were extremely broad. See Chenault v. Nebraska Farm Products, D.C.D. Neb., 9 F.R.D. 529, 531.

In view of the generality of the allegations of negligence in the complaint, defendant is entitled to some indication of plaintiff's present information about the cause of the accident without foreclosing plaintiff from relying on any additional information which may be uncovered later. Cf. 4 Moore, Federal Practice (2d ed.) 2312.

■ It will be important to note the last sentence of the Court's opinion just quoted—that plaintiff's response to

interrogatories based on her present information will not foreclose plaintiff from relying on any additional information which may be uncovered later. Plaintiff's continued employment of discovery procedures during the pre-trial stages of this action is to be encouraged in the interest of administration of justice. A recently adopted local rule of this Court provides 120 days for completion of depositions and discovery, but for good cause shown the time may be extended. Local Rule 2.08(b), effective October 1, 1970. Plaintiff need not be under apprehension that her answers to the pending interrogatories here will be "manifestly oppressive and a tactical maneuver designed to mummify" her case. The most current and enlightened views on the use of interrogatories discount plaintiff's position. In Wright, Law of Federal Courts, § 86 (1970), is the following comment:

> Although answers to interrogatories may limit the issues and define the contentions of the parties, the party should not be held irrevocably to them. The court has discretion to limit the proof in the light of the answers to the interrogatories, but this is a discretion that should be exercised with attention to the fact that the great goal of the rules is that judgment be given on the facts as they actually exist. A party may be embarrassed by his answer to a pre-trial interrogatory in which he took a position different from that he asserts at the trial, and it is right that he should have to explain his change of position, but his answer to the interrogatory should not be a conclusive bar to asserting a different view at the trial.

> Not infrequently it will happen that an answer to an interrogatory, though full and truthful to the best of the party's knowledge at the time it is made, will become incomplete or misleading in the light of later information he discovers. Is he under any duty to amend his answer and advise the party who submitted the interrogatory of his new information? This question has caused the courts difficulty, and though some courts impose such a duty on the party, the decisions are by no means all one way. For a party to sit idly by, knowing that a previous answer he has given to an interrogatory is not truthful in the light of his present information, seems inconsistent with the purpose of the rules to avoid surprise and with the standards expected of a learned and honorable profession. At the same time it must be recognized that in a large and busy law practice the lawyer may honestly not realize that information he has just acquired is inconsistent with an answer he has given months or years before to an interrogatory.

Good and sound principles of administration of justice will require that answers to interrogatories be supplemented by new information acquired by the answering party. Local Rule 20(f) of the United States District Court for the Eastern District of Pennsylvania provides:

> Upon discovery by any party of information which renders that party's prior answers to interrogatories substantially inaccurate, incomplete or untrue, such party shall file appropriate supplemental answers with reasonable promptness.

See discussion in Greyhound Lines, Inc. v. Miller, 402 F.2d 134 (8th Cir. 1968), and Annotation, 88 A.L.R.2d 657 (1963). A helpful summary statement will be found in 23 Am.Jur.2d, Depositions and Discovery, § 290 (1965), including the conclusion that the "federal cases have generally taken the view that even in the absence of specific requests for continuing answers, the interrogated party has a duty to supply additional information received after the initial answers were supplied, and that consequently it was proper or at least unnecessary for

the interrogatories by their terms to require continuing answers."

Much attention was given to this question in the revision of the rules relating to depositions and discovery, Federal Rules of Civil Procedure, effective July 1, 1970. The Advisory Committee's Note (48 F.R.D. 487, at 507) provides the following comment:

Subdivision (e)—Supplementation of Responses. The rules do not now state whether interrogatories (and questions at deposition as well as requests for inspection and admissions) impose a "continuing burden" on the responding party to supplement his answers if he obtains new information. The issue is acute when new information renders substantially incomplete or inaccurate an answer which was complete and accurate when made. It is essential that the rules provide an answer to this question. The parties can adjust to a rule either way, once they know what it is. See 4 Moore's Federal Practice ¶33.-25(4) (2d ed. 1966).

Arguments can be made both ways. Imposition of a continuing burden reduces the proliferation of additional sets of interrogatories. Some courts have adopted local rules establishing such a burden. E.g., E.D.Pa.R. 20(f), quoted in Taggart v. Vermont Transp. Co., 32 F.R.D. 587 (E.D.Pa. 1963); D.Me.R. 15(c). Others have imposed the burden by decision. E. g., Chenault v. Nebraska Farm Products, Inc., 9 F.R.D. 529, 533 (D.Nebr. 1949). On the other hand, there are serious objections to the burden, especially in protracted cases. Although the party signs the answers, it is his lawyer who understands their significance and bears the responsibility to bring answers up to date. In a complex case all sorts of information reaches the party, who little understands its bearing on answers previously given to interrogatories. In practice, therefore, the lawyer under a

continuing burden must periodically recheck all interrogatories and canvass all new information. But a full set of new answers may no longer be needed by the interrogating party. Some issues will have been dropped from the case, some questions are now seen as unimportant, and other questions must in any event be reformulated. See Novick v. Pennsylvania R.R., 18 F.R.D. 296, 298 (W.D.Pa.1955).

Supplementation of responses in discovery proceedings is increasingly important. 8 Wright and Miller, Federal Practice and Procedure, §§ 2048, 2049, and 2050 (1970).

Rule 26(e), as amended, effective July 1, 1970, now provides:

(e) *Supplementation of Responses.* A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows:

(1) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to (A) the identity and location of persons having knowledge of discoverable matters, and (B) the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of his testimony.

(2) A party is under a duty seasonably to amend a prior response if he obtains information upon the basis of which (A) he knows that the response was incorrect when made, or (B) he knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment.

(3) A duty to supplement responses may be imposed by order of the court, agreement of the parties, or at any time prior to trial through new re-

quests for supplementation of prior responses.

As amended Dec. 27, 1946, eff. March 19, 1948; Jan. 21, 1963, eff. July 1, 1963; Feb. 28, 1966, eff. July 1, 1966; March 30, 1970, eff. July 1, 1970.

This language appears to be clear and explicit and will greatly clarify procedure, yet leaving latitude, under Rule 26(e) (3), in the District Courts to require supplementation of responses. Rule 33(a), as amended, effective July 1, 1970, allows prompt service of interrogatories following institution of an action. A party, as plaintiff in the pending action indicates, at the time interrogatories are served may not know the answers or have the information available for full and correct responses. The party, not then knowing the answers, may so state, but later may be required to respond or suffer imposition of sanctions. The Poling Bros. No. 6 (Petition of Chester A. Poling, Inc.), 2 F.R.D. 336, 337 (D.C.E.D.N.Y.1942); Roberson v. Great American Insurance Companies, 48 F.R.D. 404, 411 (D.C.N.D. Ga.1969); Greyhound Lines, Inc. v. Miller, 402 F.2d 134 (8th Cir. 1968). See generally Rule 37, Federal Rules of Civil Procedure, amended, effective July 1, 1970.

Some of the general rules and principles relating to interrogatories have strong application here. For example:

■ First: The fact that plaintiff may disclose her evidence during the pre-trial development of the action by giving answers to interrogatories does not justify refusal to answer the interrogatories when the answers given further the purposes of the Rules, shorten the trial, and expedite the orderly administation of justice. Maher Bros. Red Star Towing & Transportation Co. v. United States, 35 F.Supp. 1022, 1023 (D.C.E.D.N.Y.1940).

■ Second: Discovery, through interrogatories, may be employed to obtain information on any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the examining party or of any other party. Rule 26(b). This includes opinions as to causal connection in events incident to claimed negligence. Kerr-McGee Corp. v. Texas Oklahoma Express, Inc., 43 F.R.D. 336 (D.C. W.D. Okla.1967). Trends in recent decisions indicate approval of interrogatories seeking factual conclusions and legal opinions. Leumi Financial Corp. v. Hartford Accident & Indemnity Co., 295 F.Supp. 539 (D.C.S.D.N.Y.1969). Rule 33(b), as amended, effective July 1, 1970, and Advisory Committee's Note thereon (48 F.R.D. 487, at 523–524); 8 Wright and Miller, Federal Practice and Procedure, § 2167 (1970).

■ Third: In 2A Barron & Holtzoff, Federal Practice and Procedure, § 766, pages 299–300 (1961), the writers state:

The fact that the information sought is already known to the interrogator is not a valid ground for objection to the interrogatories. Interrogatories are not limited to facts which are exclusively or peculiarly within the knowledge of the interrogated party. The fact that the information sought is equally available to the interrogator, or is a matter of public record, does not render the interrogatories objectionable. * * *

■ Fourth: Evidence which may be inadmissible at trial may be sought by interrogatories when it appears reasonably calculated to lead to discovery of admissible evidence. Rule 26(b); 23 Am.Jur.2d, Depositions and Discovery, § 158 (1965).

■ Fifth: Interrogatories, otherwise relevant, are not objectionable and oppressive simply on grounds they may cause the answering party work, research and expense. Luey v. Sterling Drug, Inc., 240 F.Supp. 632 (D.C.W.D. Mich.1965).

■ Sixth: Names and addresses of persons having knowledge of relevant facts or discoverable matter may be ascertained by interrogatories. Rule 26(b); 23 Am.Jur.2d, Depositions and Discovery, § 188 (1965). See Annotation, 19 A.L.R.3d 1114 (1968), on discovery of witnesses to be called at trial, and Annotation, 37 A.L.R.2d 1152 (1954), on names and addresses of witnesses to accident or events.

■ Defendant's interrogatory 3 inquires as to "grounds" upon which plaintiff bases her case, in addition to the acts of negligence sought to be discovered. Plaintiff replies that grounds are primarily a matter of legal research and a work product. Webster's Dictionary defines grounds as including a basis for belief, action or argument. Black's Law Dictionary defines ground of action as the basis of a suit and the foundation or fundamental state of facts on which an action rests. In 35A C.J.S. Federal Civil Procedure § 616, in discussing Grounds of Claim or Defense, is the statement that "In taking a pre-trial deposition the examination may extend to any relevant matter whether it relates to a claim or to a defense." Interrogating as to the bases of an action apparently involves relevant matter readily known to plaintiff. If unknown to plaintiff, she may so state and modify her position later by supplemental answers to the interrogatories.

■ Defendant's interrogatory 5 inquires whether plaintiff relies on a presumption of law or fact and, if so, what is the nature of the presumption. Counsel reply that this "is a request for legal research, theory, and work product." A presumption may take the place of evidence and shift the burden of proof. Plaintiff may not be schooled on the meaning of the term "res ipsa loquitur" but counsel, largely responsible for preparation of answers to interrogatories, will be able to explain that a state of facts may speak for itself under certain circumstances. See Note, 50 W.Va.Law Quar. 181 (1947), and 9 Wigmore on Evidence, § 2491 (1940). If plaintiff does not know of and is not informed by counsel concerning any presumption relied upon in her action, she may so state and later supplement her answers in the event she acquires knowledge of any such presumption. See 8 Wright and Miller, Federal Practice and Procedure, § 2179 (1970).

Rules relating to discovery in civil litgation, Rules 26–37, Federal Rules of Civil Procedure, rest on the basic philosophy "that prior to trial every party to a civil action is entitled to disclosure of all relevant information in the possession of any person, unless the information is privileged." Wright, Law of Federal Courts, § 81 (1970). For a generation, after their adoption in 1938, the discovery rules remained greatly unchanged but with a wealth of discussion and decisional literature thereon. After extensive study, the rules were substantially changed, effective July 1, 1970. The order of the Supreme Court of the United States, entered March 30, 1970, making effective the amendments to the rules, provides:

2. That the foregoing amendments to the Rules of Civil Procedure shall take effect on July 1, 1970, and shall govern all proceedings in actions brought thereafter and also in all further proceedings in actions then pending, except to the extent that in the opinion of the court their application in a particular action then pending would not be feasible or would work injustice, in which event the former procedure applies.

The issues in the case now being considered arose prior to the 1970 amendments to the Rules, but, regardless of whether provisions and requirements of Rules 26, 33 and 37, before or after amendment, are called into play, the end result here is substantially the same. Hereafter, however, the amended rules will apply, unless, as the Supreme Court's order provides, the amended

rules would work an injustice as to procedure in some prior pending matter.

As noted earlier herein, plaintiff has answered defendant's interrogatories 6 and 7 which need not be further considered at this time. Therefore, plaintiff's remaining objections are directed to defendant's interrogatories 1 and 3, as originally served, and 2, 4 and 5, as modified.

Neither the specific language of plaintiff's objection to interrogatory 1 nor the general statements of law and argument in counsels' memorandum in support of the objection are persuasive when examined and weighed in the light of the rules and principles of law applicable in an action of this nature. The interrogatory is not found to be oppressive. The fact that defendant may have knowledge of the alleged accident or means to acquire the knowledge does not preclude interrogating plaintiff thereon. The Federal Rules of Civil Procedure as to depositions and discovery are available to plaintiff. The above quoted opinion in Hartsfield v. Gulf Oil Corp., 29 F.R.D. 163 (D.C.E.D.Pa.1962), is an adequate discussion of the law and disposition of issues arising from plaintiff's objection to defendant's interrogatory 1.

▮ Interrogatory 2, as modified, asks plaintiff to "give the names and addresses of persons having knowledge of relevant facts concerning the negligence set forth under Interrogatory No. 1 herein." Counsel, in their memorandum, state that plaintiff, being unable to answer interrogatory 1 at this time, may not answer interrogatory 2, but indicate that plaintiff is in a position to answer a rephrased interrogatory 2 based on plaintiff's claim. Plaintiff's argument here is untenable. See Gerber v. United States Lines Co., 15 F.R.D. 500 (D.C. S.D.N.Y.1954), above quoted; 8 Wright and Miller, Federal Practice and Procedure, § 2179 (1970).

Plaintiff's objection to interrogatory 3 and counsels' memorandum in support of the objection assert that the interrogatory calls for a statement of legal theories and for disclosure of plaintiff's opinion and the research and work product of plaintiff's lawyers. Again, plaintiff's position is found to be untenable in the light of the rules and principles of law examined earlier in this opinion.

Interrogatory 4, initial and modified, is in substance a repetition of matters in interrogatories 1 and 2. The initial bases of plaintiff's objection to interrogatory 4 were greatly eliminated by the modified interrogatory. No law or argument in counsels' memorandum in support of the objection or in their reply memorandum is found to aid plaintiff's cause.

▮ Plaintiff objects to interrogatory 5 by saying it "is a request for legal research, theory and work product" and that defendant is not entitled thereto. Counsels' argument in their memorandum as to the objection to modified interrogatory 5 in substance restates the same position, but without persuasive force and without sustaining the burden required of plaintiff in support of her objections.

The burden is upon the objecting party to show that her objections to the interrogatories should be sustained. 2A Barron & Holtzoff, Federal Practice and Procedure, § 775 (Rules Ed. 1961), cited in Pressley v. Boehlke, 33 F.R.D. 316, 318 (D.C.W.D.N.C.1963). See 8 Wright and Miller, Federal Practice and Procedure, § 2173 (1970).

Upon careful study and review of the interrogatories and the objections thereto and the rules and principles of law applicable, including the memoranda presented by counsel, the Court finds and holds the objections to interrogatories 1 and 3 as originally served, and to interrogatories 2, 4 and 5, as modified, are untenable. Accordingly, the objections are overruled and plaintiff is di-

rected to answer said interrogatories within thirty (30) days from the date of the Court's order which will be entered making this memorandum opinion a part of the record in this action and effectuating the findings and directions herein contained.